UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUPERT FLOWERS,<br><br>    Plaintiff,<br><br>v.<br><br>B. JOHNSON, et al.,<br><br>    Defendants. | CASE NO. 1:15-cv-01778- AWI-MJS (PC)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STRIKE; AND**<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 31, 44)**<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This matter proceeds on Plaintiff's First Amended Complaint against Correctional Officers ("CO") Johnson and Martinez on an excessive force claim and against Lt. Marsh on a failure to intervene claim. Pending is Defendants' motion for summary judgment as to Lt. Marsh, which Plaintiff opposes. Also pending is Defendants' motion to strike. Both motions are fully briefed and ready for disposition.

**I.    Plaintiff's Allegations**

The acts giving rise to this action occurred while Plaintiff was housed at California State Prison in Corcoran, California ("CSP-Cor").

Plaintiff's allegations can be fairly summarized as follows:

1

On December 3, 2014, Defendants CO Martinez aggressively handcuffed Plaintiff and escorted him from the Program Office where Plaintiff had been held in a holding cell. Once outside, CO Martinez and CO Johnson severely assaulted Plaintiff without cause, resulting in a fractured jaw and permanent injuries, including loss of taste and smell. Lt. Marsh witnessed the entire incident but took no action to stop it.

## II. Facts

The following facts are found to be undisputed except where noted otherwise:

At all relevant times, Plaintiff was a state inmate housed at CSP-Cor on Facility 3A, Building 2. Pl.'s Dep. (ECF No. 31-4) at 16:2-4. Defendant Lt. Marsh was employed at CSP-Cor as the Facility 3A Lieutenant. Decl. of T. Marsh in Supp. of Defs.' Mot. Summ. J. (ECF No. 31-5) ¶ 2.

On December 3, 2014, a mass cell search was conducted on Facility 3A by the Investigative Services Unit. Marsh Decl. ¶ 3. During this search, the inmates from Building 1 were placed on the East Side Yard, and inmates from Building 2 were placed on the West Side Yard. Id.

At approximately 10:00 a.m., a fight broke out on the East Side Yard. Marsh Decl. ¶ 4. After correctional staff regained control of that yard, inmates were recalled from both yards to their respective housing units. Id. When it was time for inmates on the West Side Yard to return to Building 2, some of the inmates were disgruntled and uncooperative, leading the staff to order down the West Side Yard. Id.

According to the Defense, when Plaintiff was ordered to stand up and return to his cell, he did not fully cooperate. Marsh Decl. ¶ 5; Pl.'s Dep. at 36:5-24, 39:6-15. Lt. Marsh thus placed him in handcuffs and escorted him to a holding cell in the Facility 3a Program Office. Marsh Decl. ¶ 5. CO Martinez accompanied Lt. Marsh during this escort. Pl.'s Dep. at 36:22-24.

After Plaintiff calmed down, Lt. Marsh released him from his holding cell and directed him to return to his assigned housing unit. Marsh Decl. ¶ 6. Per Lt. Marsh, CO Martinez walked through the door of the Program Office as Plaintiff was leaving. Id. Lt.

Marsh contends Plaintiff and CO Martinez accidentally bumped into each other. Id. CO Martinez said "Excuse me," but Plaintiff stared at him and did not move. Id. Based on this interaction and Lt. Marsh's perception of Plaintiff's body language that he deemed hostile and threatening, Lt. Marsh ordered Plaintiff to turn around and told CO Johnson to handcuff him. Id. ¶ 7.

Plaintiff's account of these events differs. Per Plaintiff, CO Martinez, who was already in the Program Office and acting belligerently towards Plaintiff, stood in the doorway to prevent Plaintiff's exit. Pl.'s. Opp'n at 1-2; Pl.' Dep. at 48:5-13. Plaintiff said "Excuse me" to CO Martinez, to no avail. Id. Lt. Marsh then directed CO Martinez to move aside, but CO Martinez ignored Lt. Marsh's directive and continued to block Plaintiff's exit. Id. at 49:6-16. When Plaintiff was ordered handcuffed, CO Martinez (and not CO Johnson) placed handcuffs on Plaintiff tightly and in an aggressive manner. Pl.'s Dep. at 51:13-16; Pl.'s Opp'n at 2. At this point, Plaintiff said, "Why are you escorting me like this?" First Am. Compl. ¶ 15.

After Plaintiff was secured in handcuffs, Plaintiff was escorted out of the Program Office by CO Martinez and CO Johnson. Marsh Decl. ¶ 7. Lt. Marsh denies that he accompanied the escort and claims that he instead returned to his office, which was located inside of the Program Office. Id. He also denies having had any further interaction with Plaintiff that day and further denies having observed CO Martinez or CO Johnson use any kind of force on Plaintiff. Id. ¶¶ 7-8.

Plaintiff's version of the events following his escort from the Program Office is as follows: Based on the way he was being escorted in a face-down position, Plaintiff admits that he does not know if Lt. Marsh walked out of the Program Office since he was unable to look behind him or even focus on where Lt. Marsh was at the time. Pl.'s Dep. at 53:2-10. Once outside of the Program Office, CO Martinez and CO Johnson assaulted Plaintiff. Pl.'s Dep at 54:18—55:4. At one point, Plaintiff briefly lost consciousness. Id. at 57:7-9, 59:5-6. Plaintiff was so focused on the attack as it was occurring that he was

3

unaware of the presence of any inmates or staff beside CO Martinez and CO Johnson. Id. at 59:7-21.

Even though Plaintiff did not see Lt Marsh, Plaintiff insists that Lt. Marsh did exit the Program Office and was a witness to the assault. Plaintiff claims that, at the conclusion of the attack, he heard Lt. Marsh say "Somebody grab the ankle cuffs." Pl.'s Dep. at 55:5-6. Plaintiff also submits the notes of an investigative interview with CO Johnson following the incident. See Pl.'s Decl. Ex. A (ECF No. 38). In these notes, CO Johnson stated that, after the assault, Lt. Marsh directed two other officers to complete the escort of Plaintiff. Id.

### III. Summary Judgment Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 569(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

4

which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

## IV. Discussion

### A. Defendants' Motion to Strike

Defendants move to strike the single-page attachment to Plaintiff's declaration filed in support of Plaintiff's opposition. This attachment includes the statement that CO Johnson purportedly made during an interview following the December 3, 2014, incident, in which he placed Lt. Marsh at the scene of the assault. Defendants argue this attachment is inadmissible because it is not properly authenticated, it is unsworn, it lacks foundation, it lacks personal knowledge, and it contains hearsay within hearsay.

The attachment at issue appears to be page 2 of a 4-page document concerning "Appeal Log CSPC-2-15-00297"[1] and includes a "CONFIDENTIAL" stamp on top. This attachment includes three separate paragraphs summarizing the interviews of CO Johnson, CO Martinez, and Sergeant L. Cahlander, respectively.

Plaintiff claims the attachment is a page of an investigative report submitted by a Lt. E. Sanchez, who investigated Plaintiff's staff misconduct and excessive force grievance. Plaintiff also contends that the attachment was provided by Defendants

---

[1] This appeal log number is the same number identified by Plaintiff in the First Amended Complaint correlating to the administrative grievance he filed following the incident. See First Am. Compl. ¶ 2.

6

themselves during the course of discovery in response to Plaintiff's First Request for Production of Documents. Defendants do not dispute either of these claims.

Defendants are correct of course that "documentary evidence must be properly authenticated." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir.1990) (document may be authenticated by declaration of individual having personal knowledge of matters set forth in document and creation of document); see also Beyene v. Coleman Sec. Serv., Inc., 854 F.2d 1179, 1182 (9th Cir.1988) (quoting U.S. v. Dibble, 429 F.2d 598, 602 (9th Cir.1970) ("A writing is not authenticated simply by attaching it to an affidavit.... The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery.").

However, documents not authenticated at the summary judgment stage may be made admissible at trial. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept.of Public Safety, 220 Fed. Appx. 670 (9th Cir. 2007).

Defendants object to the admission of the attachment on multiple procedural grounds, but they do not deny that they produced the attachment to Plaintiff during discovery, and they do not argue that the attachment is not authentic. See Fenje v. Feld, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003) ("Even if a party fails to authenticate a document properly or to lay a proper foundation, the opposing party is not acting in good faith in raising such an objection if the party nevertheless knows that the document is authentic."). Defendants' objections on these grounds are therefore overruled.

Defendants also rely on the hearsay rule and lack of personal knowledge in moving to strike the attachment. In response, Plaintiff argues that this document is an exception to the hearsay rule pursuant to Federal Rule of Evidence 803(6) as a business record and/or pursuant to Federal Rule of Evidence 803(8) as a public record since it was prepared by a prison official, logged in the prison filed, and retained in them.

7

Additionally, he asserts that this falls within an exception to the hearsay rule pursuant to Federal Rule of Evidence 801(d)(2) in that it is the statement of an opposing party that was documented by a person whom the party authorized to make a statement on the subject and/or by the party's agent within the scope of that relationship. The Court agrees that the report is an exception to the hearsay rule, at least based in part on Rule 803(8). See Green v. Baca, 226 F.R.D. 624, 636 (C.D. Cal. Jan. 24, 2005). Defendants' hearsay and lack of personal knowledge objections are thus also overruled.

Defendants' motion to strike will therefore be denied.

### B. Eighth Amendment Failure to Protect

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). A prisoner's rights can be violated by a prison official's deliberate indifference by failing to intervene. Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995). Deliberate indifference occurs where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040. However, an officer can only be held liable for failing to intercede if he had a realistic opportunity to intercede and failed to do so. Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

Plaintiff claims that Lt. Marsh failed to protect him from harm when he failed to intervene when CO Martinez acted threateningly towards Plaintiff inside of the Program Office, culminating in tight handcuffs and an aggressive escort, and when Lt. Marsh failed to stop the assault outside of the Program Office despite being a witness to it.

As to the handcuffs, it is true that overly tight handcuffing can amount to excessive force. See Wall v. Cnty of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004). But whether the placement of tight handcuffs amounts to excessive force is fact-specific, and here, there are simply no facts that would suggest that LT. Marsh was aware that CO Martinez was going to place tight handcuffs on Plaintiff, that CO Martinez's conduct was excessive when handcuffing Plaintiff, or that Lt. Marsh was even aware that Plaintiff was

in pain as a result of the handcuffing. Plaintiff claims only that he said, "Why are you escorting me like this?" in response to what he deemed an aggressive escort; there are no allegations regarding tight handcuffs.

There is a deeper sub-context to Plaintiff's claim against Lt. Marsh, namely, that Lt. Marsh placed Plaintiff in harm's way when he allowed CO Martinez to continue to interact with Plaintiff even after witnessing a tense exchange between them. Tense exchanges between inmates and correctional staff are unfortunately not uncommon in prisons, and the Court declines to find that mere awareness of tension can serve as the basis of a failure to protect claim. There must, of course, be awareness of a substantial risk of serious harm and deliberate indifference to that risk, and the facts here simply do not indicate either. Therefore, summary judgment should be entered for Lt. Marsh to the extent Plaintiff's claim is premised on Lt. Marsh's conduct before the actual assault, including his alleged placement of Plaintiff in harm's way.

As for the assault itself, Lt Marsh denies that he witnessed it and claims that he had no further interaction with Plaintiff after the latter was escorted from the Program Office. In support, Defendants submit Plaintiff's deposition testimony, in which Plaintiff testified that he was unaware if Lt. Marsh exited the Program Office when he did, and that Plaintiff was unaware during the assault whether any inmates or other staff members were witnesses.

Plaintiff, however, proffers evidence that Lt. Marsh at some point exited the Program Office and witnessed the assault. Plaintiff relies on his own recollection after the assault when he heard Lt. Marsh direct someone to grab ankle cuffs. Plaintiff also submits the notes of a post-incident interview with CO Johnson where this Defendant said that Lt. Marsh directed two other correctional officers to complete Plaintiff's escort after the assault.

These competing versions create a dispute of material fact as to whether Lt. Marsh was present at and witnessed the assault and thus had an opportunity to intervene. Resolution of these questions is within the province of a jury and not capable

9

of determination on this motion. Additionally, Lt. Marsh is not entitled to qualified immunity because the law was well-established at the time of the incident that an officer's failure to stop an attack when he had an opportunity to do violates the Eighth Amendment. Farmer, 511 U.S. at 833. Accordingly, the undersigned will recommend that Defendants' motion for summary judgment be granted in part.

## V. Conclusion

Based on the foregoing, IT IS HEREBY ORDERED that Defendants' motion to strike (ECF No. 44) is DENIED; and

IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment (ECF No. 31) be GRANTED IN PART as follows:

1. Summary judgment be entered for Lt. Marsh on Plaintiff's failure to intervene claim insofar as it relates to Lt. Marsh's conduct predating the assault; and
2. Summary judgment be denied for Lt. Marsh on Plaintiff's failure to intervene claim insofar as it relates to the alleged assault outside of the Program Office.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  December 8, 2017         /s/ *Michael J. Seng*
                                 UNITED STATES MAGISTRATE JUDGE

11