# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUPERT FLOWERS,<br><br>          Plaintiff,<br><br>   v.<br><br>B. JOHNSON, et al.,<br><br>          Defendants. | 1:15-cv-01778-JLT (PC)<br><br>**AMENDED PRETRIAL ORDER**<br><br>**Deadlines:**<br>Motions in Limine Filing: 7/13/18<br>Oppositions to Motions in Limine: 8/3/18<br>Trial Submissions: 7/19/18<br>Jury Trial: August 13, 2018, 8:30 a.m.<br>          Bakersfield Courthouse |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. This matter has completed discovery, dispositive motions have been decided, and a trial date has been scheduled. Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, the Court will by this order set a further schedule for this litigation. Upon consideration of the parties' comments at hearing, the parties' pretrial statements and the file in this case, the Court issues the following pretrial order.

**1.  JURISDICTION/ VENUE**

Plaintiff seeks relief under 42 U.S.C. § 1983. Therefore, the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. In addition, Plaintiff's claims arise out of events that occurred at Corcoran State Prison (CSP-Cor), located in Corcoran, California. Accordingly, venue is proper in the United States District Court for the Eastern District of California sitting in Bakersfield. 28 U.S.C. § 1391.

1

**2. JURY TRIAL**

All parties request a jury trial.

**3. UNDISPUTED FACTS**

a. At all times relevant to the First Amended Complaint, Plaintiff was a state prisoner housed at CSP-COR on Facility 3A, Building 2.

b. Defendant Marsh was employed by CDCR at CSP-COR as the Facility 3A Lieutenant.

c. Defendants Martinez and Johnson were employed by CDCR at CSP-COR as Correctional Officers on Facility 3A. (*See* Doc. 12, FAC, pp. 3-4.)

d. On December 3, 2014, a mass cell search was conducted on Facility 3A by the Investigative Services Unit.

e. During this search, the inmates from Building 1, including Plaintiff, were placed on the East Side Yard, and the inmates from Building 2 were placed on the West Side Yard.

f. At approximately 10:00 a.m., a fight/riot broke out on the East Side Yard.

g. After correctional staff regained control of that yard, inmates were recalled from both yards to their respective housing units.

h. When it was time for inmates on the West Side Yard to return to Building 2, some of the inmates were disgruntled and uncooperative, leading the staff to order the West Side Yard down.

i. Lieutenant Marsh placed Plaintiff in handcuffs and escorted him to a holding cell in the Facility 3A Program Office.

j. After a while, Lieutenant Marsh released Plaintiff from the holding cell and directed him to return to his assigned housing unit.

k. As Plaintiff was leaving the Program Office to return to his assigned housing unit, he encountered Officer Martinez in the doorway that leads to the yard.

l. After a discussion between Officer Martinez and Plaintiff, Plaintiff was placed in handcuffs.

| | |
|---|---|
| 1 | m. After Plaintiff was handcuffed, he was escorted out of the Program Office. |
| 2 | n. At some point during the escort back to his housing unit, Plaintiff ended up on the ground outside of the Program Office, and was subsequently placed in a wheelchair to be returned to his cell. |
| 5 | o. Before he was returned to his cell, Plaintiff extricated himself from the wheelchair and placed himself on the ground. |
| 7 | p. After the incident, Plaintiff was escorted to the facility medical clinic for an evaluation and treatment. |

4. **DISPUTED FACTS**

   a. Whether Plaintiff was involved in the fight/riot on the Facility 3A yard.
   b. Whether Plaintiff was assisted to a standing position after ending up on the ground outside the program office.
   c. Whether Officer Marsh ordered two other officers to escort Plaintiff.
   d. Whether Plaintiff was escorted to Facility 3A Building 3 walk alone yard.
   e. Whether, after remaining in walk alone yard for some time, Plaintiff was placed in a wheelchair.
   f. Whether Officer Martinez accidently bumped into Plaintiff while leaving the Program Office.
   g. Whether Officer Martinez intentionally blocked Plaintiff's exit from the Program Office and acted belligerently towards Plaintiff.
   h. Whether Plaintiff took a hostile and aggressive stance towards Officer Martinez as Plaintiff left the Program Office, prompting Lieutenant Marsh to order Officer Johnson to place Plaintiff in handcuffs to escort him back to his housing unit.
   i. Whether Officer Martinez or Officer Johnson handcuffed Plaintiff in the Program Office, and whether the handcuffs were applied too tightly.[1]

---

[1] Note, however, that any failure-to-intervene claim against Lieutenant Marsh regarding tight handcuffs has been dismissed. (*See* Doc. 46 at 8-9 ["Therefore, summary judgment should be entered for Lt. Marsh to the extent Plaintiff's claim is premised on Lt. Marsh's conduct before the actual assault, including his alleged placement of Plaintiff in harm's way."]; Doc. 48.)

j. Whether Officer Martinez initiated the escort and aggressively yanked on Plaintiff's handcuffs before Officer Johnson volunteered to take over the escort.

k. Whether Officer Johnson and another Correctional Officer escorted Plaintiff out of the Program Office, or whether Officers Johnson and Martinez escorted Plaintiff out of the Program Office.

l. Whether Officer Johnson took possession of Plaintiff outside of the Program Office.

m. Whether Plaintiff continued to behave disruptively during the escort by laying down on the ground after exiting the Program Office.

n. Whether Officer Johnson slammed Plaintiff to the ground, landing on his face.

o. Whether Officers Johnson and Martinez assaulted or applied excessive force on Plaintiff outside the Program Office.

p. Whether Lieutenant Marsh was present when Officers Martinez and Johnson allegedly assaulted Plaintiff outside the Program Office.

q. Whether Lieutenant Marsh had the opportunity, but failed to intervene when Officers Martinez and Johnson allegedly used excessive force on Plaintiff outside of the Program Office.

r. Whether Lieutenant Marsh and Officers Martinez and Johnson failed to file an incident report in an attempt to suppress and conceal the alleged assault of Plaintiff.

s. Whether Plaintiff forcibly threw himself out of his wheelchair during the escort.

t. Whether Plaintiff suffered any injuries including, but not limited to a fractured jaw, a sprained knee, chronic sinus issues, and/or any other injuries as a result of Defendants' alleged excessive use of force and the extent of medical care any such injuries required.[2]

### 5. DISPUTED EVIDENTIARY ISSUES

Plaintiff's Evidentiary Issues

---

[2] Plaintiff lists a number of injuries he allegedly sustained from Defendants' alleged use of excessive force and delineates treatment he received for those injuries as undisputed facts. (Doc. 57, pp. 3 & 4.) However, Defendants did not indicate that any such facts were undisputed. (*Compare*, Doc. 65, pp. 2 & 3.) Though disputed, the details of any such injuries Plaintiff sustained and their causation and treatment may be presented at trial, but need not be recited in explicit detail here.

4

a. None at this time, but Plaintiff anticipates filing motions in limine to exclude evidence of any adverse actions or investigations pertaining to Plaintiff.

Defendants' Evidentiary Issues

a. Whether evidence concerning any of Plaintiff's claims that have been dismissed is admissible for any purpose.

b. Whether Plaintiff should be able to offer any opinion testimony concerning his medical records or medical condition.

c. Whether Plaintiff should be able to offer any evidence regarding Defendants' involvement, if any, in other lawsuits, claims, inmate grievances, or incidents alleging misconduct.

d. Whether Plaintiff should be able to offer evidence or testimony regarding any settlement discussions the parties may have had.

e. Whether Plaintiff should be able to offer evidence that the State may pay the judgment or reimburse Defendants in the event a judgment is rendered against them.

f. Whether the abstracts of judgment or other evidence of felony convictions for Plaintiff or any incarcerated witnesses are admissible for impeachment purposes.

g. Whether any written statements by inmate witnesses are admissible.

Both sides may object to specific testimony and exhibits when presented with the opportunity to hear such testimony and examine such exhibits. Both sides may file specific objections to each other's exhibits once they have been exchanged. And, both sides may brief any evidentiary issues raised above, as well as any other evidentiary issues that may arise, in motions in limine.

**6.     SPECIAL FACTUAL INFORMATION**

None.

**7.     RELIEF SOUGHT**

Plaintiff seeks an unspecified amount of compensatory and punitive damages, as well as court fees and costs. (Doc. 12, p. 10.) However, because Plaintiff is representing himself and has not paid costs of suit, he is not entitled to recover costs.

5

Defendants seek judgment in their favor with Plaintiff taking nothing.

**8. POINTS OF LAW**

    **a. Section 1983**

The Civil Rights Act under which this action was filed provides a cause of action against any "person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States.]" 42 U.S.C. § 1983. Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

To prevail, Plaintiff must establish the existence of a link, or causal connection, between each state defendant's actions or omissions and a violation of his federal rights. *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011). Plaintiff must also establish that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

    **b. Excessive Force**

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force against inmates." *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). "Persons are sent to prison as punishment, not *for* punishment." *Gordon v. Faber*, 800 F.Supp. 797, 800 (N.D. Iowa 1992) (citation omitted), *aff'd*, 973 F.2d 686 (8th Cir.1992). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation and quotation omitted).

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm." *Hudson*, 503 U.S. at 7 (1992) (citing *Whitley v.*

*Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7. The extent of a prisoner's injury is also a factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. *Id.* Although the absence of serious injury is relevant to the Eighth Amendment inquiry, it is not determinative. *Id.* That is, use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injury. *Id.* at 9.

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer *de minimis* injuries. *Hudson*, 503 U.S. at 6-7 (8th Amendment excludes from constitutional recognition *de minimis* uses of force). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether significant injury is evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir.2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries[3])). "Injury and force, . . . , are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (internal quotations marks and citations omitted).

### c. Failure to Protect/Intervene

The failure to intervene can support an excessive force claim where the bystander-officers had a realistic opportunity to intervene but failed to do so. *Lolli v. County of Orange*, 351 F.3d

---

[3] Defendants' argument that "Plaintiff has to show more than a de minimis injury," (Doc. 65, p. 9), is rejected.

7

410, 418 (9th Cir. 2003); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995); *Cf. Rutherford v. City of Berkeley*, 780 F.2d 1444, 1448 (9th Cir.1986) (reversing directed verdict for three officers where they admitted that they participated in the detaining, arrest and handcuffing of the plaintiff, and the plaintiff testified that he saw their faces during the beating). "A guard who stands and watches while another guard beats a prisoner violates the Constitution . . . ." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) citing *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir.2005); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir.1996).

### d. **Deference Accorded to Prison Officials**

When addressing whether prison officials' acts bear a rational relation to a legitimate peonolgical interest, "substantial deference" must be accorded to the professional judgment of administrators, "who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 131-132 (2003) *ref Pell*, 417 U.S. at 826-827; *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126, 128 (1977); *Turner*, 482 U.S. at 85, 89; *Block v. Rutherford*, 468 U.S. 576, 588 (1984); *Bell v. Wolfish*, 441 U.S. 520, 562 (1979).

> Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.

*Whitley v. Albers,* 475 U.S. 312, 320-22 (1986); *see also LeMaire v. Maass*, 12 F.3d 1444, 1453 (9th Cir. 1993). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton*, 539 U.S. at 132; *ref Jones*, 433 U.S. at 128; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987); *Shaw v. Murphy*, 532 U.S. 223, 232 (2001).

### e. Mental Distress -- Physical Injury Requirement

Section 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code)." 42 U.S.C. § 1997e(e). Plaintiff is not proceeding on any allegations pertaining to the commission of a sexual act. (*See* Docs. 12, 13.) Thus, in order to obtain damages for mental or emotional injuries, Plaintiff will be required to show physical injury.

### f. Punitive Damages

Punitive damages are available under § 1983, *see Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17 (1991), and are available even when a plaintiff is unable to show compensable injury *see Smith v. Wade*, 461 U.S. 30, 55, n. 21 (1983). Moreover, punitive damages may be the only significant remedy available in some actions under § 1983 where constitutional rights are maliciously violated but the victim cannot prove compensable injury. *See Smith v. Wade*, 461 U.S. 30, 55 (1983). However, punitive damages are not available against municipalities, *see Kentucky v. Graham, 473 U.S. 159*, 167, n. 13; nor are they available against state officials sued in their official capacities, *see Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996). Awards of punitive damages are left to the jury's discretion upon a finding that the defendant either acted with an evil motive or with reckless/callous indifference to the plaintiff's federally protected rights. *See Smith*, 461 U.S. at 54, 56; *Dang v. Cross*, 422 F.3d 800, 807-09 (9th Cir. 2005).

### g. Impeachment by Prior Felony Convictions

Whether evidence of a conviction will be admitted is governed by Federal Rules of Evidence 609. Evidence must be admitted, pursuant to Fed. R. Evid. 403 in civil cases in which the witness is not the defendant and where the conviction was punishable by more than one year in prison. Fed. R. Evid. 609(a)(1)(A). Generally, a conviction will not be admitted if more than 10 years have passed since the time the witness was released from confinement on the charge. Fed. R. Evid. 609(b). However, the 10-year presumptive bar does not apply if the witness remains in custody for the charge at issue. *Id.* Nevertheless, in either situation, evidence of a

conviction is admissible only if its probative value substantially outweighs by its prejudicial effect. Fed. R. Evid. 609(b)(1). However, even if the probative value substantially outweighs its prejudicial effect, such evidence will not be admitted unless the proponent gives an adverse party reasonable written notice[4] of the intent to use it so that the party has a fair opportunity to contest its use. Fed. R. Evid. 609(b)(2).

**9.     ABANDONDED ISSUES**

None.

**10.    WITNESSES**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(10). The parties are allowed however, to list/call additional witnesses for purposes of rebuttal/impeachment at the time of trial.

<u>Plaintiff anticipates calling the following witnesses:</u>

a.  Defendant, Lieutenant T. Marsh, Corcoran State Prison

b.  Defendant Officer B. Johnson, Corcoran State Prison

c.  Defendant Officer M. Martinez, Corcoran State Prison

d.  Sergeant L. Cahlander, Corcoran State Prison

e.  E. Sanchez, Corcoran State Prison

f.  LVN J. Robinson, Corcoran State Prison

g.  Dr. Claudia Santucci, San Joaquin Community Hospital

h.  Dr. M. Pallomina, San Joaquin Community Hospital

i.  Dr. Stillwater, Telemeds

j.  Sergeant C. Love, Corcoran State Prison

k.  Lieutenant R. Thompson, Corcoran State Prison

---

[4] The mere inclusion of this point of law in Defendants' Pretrial statement does not suffice as reasonable written notice.

Plaintiff has filed a motion for incarcerated and unincarcerated witnesses to be present. (Doc. 58.) The Court will address this motion in a separate order.

<u>Defendants anticipate calling the following witnesses:</u>

<u>Percipient witnesses:</u>

a. Lieutenant T. Marsh;

b. Officer B. Johnson;

c. Officer M. Martinez;

d. Sergeant L. Cahlander;

e. Lieutenant R. Thompson;

f. Sergeant C. Love;

g. Licensed Vocational Nurse J. Robinson; and

h. Sergeant J. Navarro.

To avoid any unnecessary delay and expense, the parties agreed on the record that documents produced by the defendants and identified by either party as exhibits from Plaintiff's central and medical files, and those of any inmate witnesses, are authenticate. However, a proper foundation still must be established before they may be admitted.

<u>Expert Witnesses:</u>

i. Captain Raul Morales

j. Dr. Meet Boparai

**11. EXHIBITS, SCHEDULES AND SUMMARIES**

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

<u>Plaintiff's Exhibits:</u>

a. Relevant portions of Plaintiff's medical file including, but not limited to:

1. December 3, 2014 medical report of injury or unusual occurrence;

2. December 3, 2014 medical triage and treatment services flow sheet;

3. December 4, 2014 medical x-ray of right mandible;

4. December 5, 2014 medical physician notes;

5. December 9, 2014 medical x-ray of right mandible;

6. December 10, 2014 medical history and physicals;

7. December 29, 2014 medical comprehensive accommodation chrono;

8. January 30, 2015 medical CAT scan of left knee;

9. February 29, 2016 medical telemedicine report;

10. November 4, 2016 medical report (ENT).

b. Relevant portions of documents from Plaintiff's Central file, including, but not limited to:

1. December 5, 2014 CDCR 3014, including all supplements, report of findings – inmate interview[5];

2. December 27, 2014 CDC 602 inmate appeal, log number CSPC-2-15-00297, including all supplements;

3. December 3, 2014 CDC 128-B, general chrono;

c. Relevant sections from the California Department Operations Manual; and

d. December 5, 2014 videotape interview of Plaintiff.

Defendants' Exhibits:

a. Abstract of Judgment representing Plaintiff's felony conviction(s) and sentence(s);

b. Abstract of Judgment representing felony conviction(s) and sentence(s) of Plaintiff's inmate witnesses, if any;

c. Plaintiff's chronological movement history;

d. DVD recording of an interview of Plaintiff Rupert Flowers (F-74848), taken by Lieutenant R. Thompson and Sergeant C. Love on December 5, 2014, at CSP-COR;

---

[5] If the defendants have not produced unredacted copies of these documents by June 22, 2018 (See p. 13 at 20-21), they SHALL bring unredacted copies of the documents to trial to be available, if needed.

  e. CDCR Form 3014 – Report of Findings – Inmate Interview Package authored by Lieutenant R. Thompson, dated December 11, 2014, and Plaintiff's attached written statement;

  f. CDCR Form 7219 – Medical Report of Injury or Unusual Occurrence, dated December 3, 2014;

  g. CDC Form 128B – General Chrono, authored by Sergeant L. Cahlander, dated December 3, 2014;

  h. CDCR Form 602 Inmate/Parolee Appeal Package, Log No. CSPC-2-15-00297, including confidential supplement;

  i. Diagrams and photographs of the areas of the prison where the alleged incident took place on December 3, 2014;

  j. Handcuffs;

  k. Select excerpts from Plaintiff Rupert Flowers's deposition, taken February 9, 2017;

  l. Select excerpts from Plaintiff Rupert Flowers's amended complaint, filed March 7, 2016; and

  m. Select excerpts from Plaintiff Rupert Flowers' (F-74848) Unit Health Record.

Defendants reserve the right to introduce documents not listed above for purposes of impeachment or rebuttal including, but not limited to, abstracts of judgments of any inmate-witnesses. Both sides may introduce any documents listed by the other side.

On or before **June 22, 2018**, the parties SHALL exchange <u>any exhibit</u> not previously produced during discovery that they intend to present at trial. In addition, the defendant SHALL produce the original and four copies of all trial exhibits, along with exhibit lists to the Courtroom Deputy no later than **July 26, 2018**.[6] Plaintiff's exhibits shall be pre-marked with the prefix "P" and numbered sequentially beginning with 1 (e.g., P-1, P-2, etc.). Defendants' exhibits shall be pre-marked with the prefix "D" and lettered sequentially beginning with 500 (e.g., D-500, D-501, etc.). The Parties shall number each page of any exhibit exceeding one page in length.

---

[6] This includes the Original for the Courtroom Deputy, one copy for the Court, one copy for the court reporter, one copy for the witness stand, and one to retain for themselves.

**12. DISCOVERY DOCUMENTS**

The following is a list of discovery documents – portions of depositions, answers to interrogatories, and responses to requests for admissions – that the parties expect to offer at trial. NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

Plaintiff's Discovery Documents:

a. All discovery responses and documents received through discovery

Defendants' Discovery Documents:

Defendants do not anticipate offering any deposition transcripts or responses to discovery at the time of trial. However, Defendants reserve the right to introduce Plaintiff's deposition transcript, which was lodged with the Court on May 11, 2017 (ECF No. 32), or portions thereof, for purposes of impeachment or rebuttal. If Plaintiff introduces any of Defendants' discovery responses into evidence, Defendants may seek to admit any remaining portions of those responses that are needed to place the evidence into context. Fed. R. Evid. 106.

**13. FURTHER DISCOVERY OR MOTIONS**

Plaintiff does not desire further discovery or motions.

Defendants anticipate filing motions in limine.[7] If appropriate, Defendants may also move for dismissal under Federal Rule of Civil Procedure 50 at the close of the evidence. The parties may also file specific objections to exhibits once they have been exchanged.

**14. MOTIONS IN LIMINE**

Any party may file motions in limine. The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial. Although the Federal Rules do not explicitly provide for the filing of motions in limine, the Court has the inherent power to hear and decide such motions as a function of its duty to expeditiously manage trials by

---

[7] Plaintiff is likewise allowed to file motions in limine in accordance with the parameters set forth here in as well as the Federal Rules of Civil Procedure and the Local Rules.

eliminating evidence that is clearly inadmissible for any purpose. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984); *Jonasson v. Lutheran Child and Family Services*, 115 F. 3d 436, 440 (7th Cir. 1997). The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Id.*

All motions in limine must be served on the other party, and filed with the Court, by **July 13, 2018**. The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial. Any opposition to the motion must be served on the other party, and filed with the Court, by **August 3, 2018.** The Court will decide all motions in limine upon the written submissions. The parties may still object to the introduction of evidence during trial.

**15.  STIPULATIONS**

See p. 11, lines 13-16.

**16.  AMENDMENTS/ DISMISSALS**

This action proceeds on Plaintiff's claims against Defendants Martinez and Johnson in their individual capacities for excessive force in violation of the Eighth Amendment of the United States Constitution, and against Defendant Lt. Marsh in his individual capacity for failure to intervene in an alleged assault outside the Program Office, in violation of the Eighth Amendment of the United States Constitution.[8] (*See* Docs. 46, 48, 51.) Neither side requests further amendments to pleadings, dismissals, additions or subtraction of parties, or dispositions as to defaulting parties. However, Defendants reserve the right to make the appropriate motions during trial to dismiss them from the action.

**17.  SETTLEMENT NEGOTIATIONS**

Plaintiff indicates that he has initiated numerous attempts to settle this action.

Defendants do not believe that further settlement negotiations or mediation under Local

---

[8] Plaintiff's failure-to-intervene claim against Lieutenant Marsh regarding tight handcuffs has been dismissed. (*See* Doc. 46 at 8-9 ["Therefore, summary judgment should be entered for Lt. Marsh to the extent Plaintiff's claim is premised on Lt. Marsh's conduct before the actual assault, including his alleged placement of Plaintiff in harm's way."]; Doc. 48.)

15

Rule 270 would be helpful. The parties participated in a settlement conference with Magistrate Judge Boone at CSP-COR on June 24, 2016, but were unable to settle the case. Defendants feel Plaintiff's valuation of his case is unreasonable, and Defendants are confident that they will prevail at trial.

**18.    AGREED STATEMENT**

None.

**19.    SEPARATE TRIAL OF ISSUES**

Plaintiff seeks bifurcation of the issue of treble damages against Defendant B. Johnson. Defendants seek to bifurcate the issue of punitive damages. The Court will bifurcate the issue of the amount of punitive damages. If the jury finds liability for punitive damages, the Court will conduct a second phase of trial on the amount of punitive damages.

**20.    EXPERTS**

Neither side requests appointment of an impartial expert.

**21.    ATTORNEYS' FEES**

Plaintiff is proceeding *pro se* and is not entitled to attorney's fees. Defendants do not seek attorneys' fees, but indicate an intent to request an award of costs if they prevail at trial.

**22.    TRIAL DATE/ ESTIMATED LENGTH OF TRIAL**

Jury trial is set for **August 13, 2018**, at 8:30 a.m. before the undersigned at the United States Courthouse located at 510 19th Street, Bakersfield, California. Trial is expected to last no longer than 2-3 days.

**23.    TRIAL PREPARATION AND SUBMISSIONS**

    **a.    Trial Briefs**

The parties may file a trial brief, but the Court does not require one. If either party chooses to file a trial brief, that SHALL occur by **August 6, 2018**.

    **b.    Jury Voir Dire**

The parties are required to file their proposed voir dire questions, in accordance with Local Rule 162.1, on or before **July 19, 2018.**

*///*

   **c.**  **Statement of the Case**

  The parties SHALL serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **July 26, 2018.** The Court will consider the parties' statements but, as necessary, will draft its own statement. The parties will be provided with the opportunity to review the Court's prepared statement on the morning of trial.

   **d.**  **Jury Instructions**

  Defendants shall file proposed jury instructions as provided in Local Rule 163 on or before **July 19, 2018.** If Plaintiff also wishes to file proposed jury instructions or object to those proposed by Defendants, he must do so on or before **July 26, 2018.**

  In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions to the extent possible. All jury instructions must be submitted in duplicate: One set will indicate which party proposes the instruction, with each instruction numbered or lettered, and containing citation of supporting authority, and the customary legend, i.e., "Given, Given as Modified, or Refused," showing the Court's action, with regard to each instruction. One set will be an exact duplicate of the first, except it will not contain any identification of the party offering the instruction or supporting authority or the customary legend of the Court's disposition. Defendants shall provide the Court with a copy of their proposed jury instructions via e-mail at JLTOrders@caed.uscourts.gov. If Plaintiff elects to file any proposed jury instructions, he may file those, as normal, under this case number with the Clerk of the Court.

   **e.**  **Verdict Form**

  Defendants shall file a proposed verdict form as provided in Local Rule 163 on or before **July 19, 2018.** If Plaintiff also wishes to file a proposed verdict form or object to the one filed by Defendants, he must do so on or before **July 26, 2018.**

**24.**  **OBJECTIONS TO PRETRIAL ORDER**

  Any party may, within 10 days after the date of service of this order, file and serve written objections to any of the provisions set forth in this order. Such objections shall clearly specify the requested modifications, corrections, additions or deletions.

**25. MISCELLANEOUS MATTERS**

None.

**26. COMPLIANCE**

Strict compliance with this order and its requirements is mandatory. All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.

IT IS SO ORDERED.

Dated: **June 18, 2018**         **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE